
Marian F. Harrison
US Bankruptcy Judge

Dated: 08/05/10



IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 308-11453 |
| RUSSELL A. LOONEY, ) | |
| ) | JUDGE MARIAN F. HARRISON |
| Debtor. ) | |
| ) | |
| OLD REPUBLIC TITLE COMPANY ) | ADV. NO. 309-0088A |
| OF TENNESSEE, AS SUBROGEE TO ) | |
| ROBERT S. GREENBERG AND ) | |
| JO ANN GREENBERG, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| RUSSELL A. LOONEY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

_____

**MEMORANDUM OPINION**
_____

This matter is before the Court upon Old Republic Title Company of Tennessee's

(hereinafter "Old Republic") complaint asserting that its claim is non-dischargeable under

11 U.S.C. §§ 523(a)(2)(A) and (a)(6).[1] For the following reasons, which represent the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1) as incorporated by Fed. R. Bankr. P. 7052, the Court finds that Old Republic's claim is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## I. BACKGROUND

The debtor was one of two members, as well as the manager of Green Investors, LLC (hereinafter "Green Investors"), during the transaction involved in this litigation. Green Investors was in the business of developing real property in Nashville, Tennessee. In October 2005, Green Investors purchased property located at 4529 Wayland Drive, Nashville, Tennessee (hereinafter "the Property"), to construct a residence for sale. Originally, Green Investors purchased the property with funds borrowed from Pinnacle Bank. On January 26, 2006, Green Investors refinanced the purchase price of $332,000 by borrowing $332,000 from Branch Banking and Trust Company (hereinafter "BB&T"). In May 2006, Green Investors borrowed an additional $1,000,000, and the debtor executed a guaranty of all Green Investors' indebtedness to BB&T, existing or arising thereafter. On April 5, 2007, Green Investors borrowed an additional $268,000 from BB&T, increasing its total indebtedness with BB&T relating to the property to $1,600,000.

---

[1] At trial, Old Republic did not prosecute its claim pursuant to 11 U.S.C. § 523(a)(6).

Carpenter Construction, Inc. (hereinafter "Carpenter Construction") was hired to be the general contractor and builder of this project. Construction of the project began in the summer of 2006. The arrangement between Carpenter Construction and Green Investors was that Carpenter Construction would present the invoices for labor and materials to Green Investors, and Green Investors would pay the invoices directly. Despite Mr. Carpenter's requests, Green Investors never put this agreement into a written contract.

In November 2006, Robert S. and Jo Ann B. Greenberg (hereinafter "the Greenbergs") became interested in the Property and contacted Carpenter Construction about purchasing it. At that point, the house on the Property was ready to be dry walled, and the Greenbergs, Green Investors, and Carpenter Construction began negotiations to complete the house. On February 2, 2007, the Greenbergs, Green Investors, and Carpenter Construction entered into a Construction and Lot Purchase Agreement for $1,905,000. Carpenter Construction was to serve as builder, and receive a total compensation of $125,000 for its services.

Mr. Carpenter testified that during construction he received the subcontractors' invoices on a weekly basis and the vendors' and materialmen's invoices on a monthly basis. Upon receipt, Mr. Carpenter delivered the invoices to the debtor via fax or by hand delivery. Despite Mr. Carpenter's failure to keep any written records to verify that the invoices were sent to the debtor, his testimony regarding his business dealings with the debtor was very credible. Until May 2007, the debtor consistently paid these invoices directly to the

subcontractors and vendors. From May 2007 through the date of closing, the debtor did not pay many of the subcontractors and vendors, and Carpenter Construction was forced to pay these directly. Interestingly, the debtor stopped timely paying the subcontractor and vendor invoices shortly after Green Investors had drawn down its entire line of credit from BB&T.

On August 10, 2007, Green Investors conveyed the property to the Greenbergs by deed of record for the purchase price of $1,934,551. As part of the closing, Green Investors paid BB&T $1,626,368.45, and the debtor was released from his personal guaranty of $1,600,000. Green Investors' total proceeds from the sale were $151,832.12. On the date of the closing, the debtor wrote two checks to himself, individually, from the sale proceeds, totaling $113,500. Prior to closing, the debtor had written 84 checks to himself from the BB&T line of credit, totaling $520,640. The debtor's explanations for the checks written to himself were varied, inconsistent, and questionable.

As part of the closing, the parties agreed to set up a $30,000 escrow account to ensure that Carpenter Construction completed certain unfinished punch list items and landscaping to the Greenbergs' satisfaction. This amount did not include the unpaid invoices from subcontractors and vendors who worked on the Property. To the contrary, Green Investors, through the debtor, represented that all subcontractors and vendors had been paid in full. Specifically, the debtor executed a Mechanics' Lien and Extended Coverage Affidavit and Indemnity related to the Property. The affidavit, signed by the debtor, indicated that all

4 - U.S. Bankruptcy Court, M.D. Tenn.

contractors and materialmen had been paid in full and there were "no person[s] or entities whatsoever who are in a position to obtain a mechanics' or materialmen's lien which would result in a judgment being rendered with priority over the interest being insured by the Policy." Based on the debtor's affidavit, Old Republic removed the mechanic's lien exception from the title insurance policy it issued to the Greenbergs.

On October 3, 2007, Carpenter Construction asserted and recorded a lien against the Property in the amount of $316,363.62, which by amendment recorded on November 13, 2007, was increased to $349,097.97. Carpenter initiated state court litigation by filing a complaint in Davidson County Chancery Court on October 25, 2007, ***Carpenter Construction, Inc. v. Green Investors, LLC, et al.***, No. 07-2407-II. Subsequently, the debtor was added as a third-party defendant in the state court litigation. Old Republic was required to defend and indemnify the Greenbergs against Carpenter Construction because it had removed the mechanic's lien exception from the title insurance policy. Old Republic paid $250,000 to settle and compromise Carpenter Construction's lien claim. Its state court litigation attorney fees were $36,940.

## II. **DISCUSSION**

Old Republic asserts that its debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Specifically, Old Republic submits that the debtor knowingly made a false statement in his affidavit regarding the payment of all contractors and materialmen, that the

debtor intended to deceive the parties, that the affidavit was meant to induce Old Republic to issue a title insurance policy, that Old Republic justifiably relied on the affidavit in removing the mechanic's lien exception, and that as a result, Old Republic had an obligation to indemnify and defend the Greenbergs against Carpenter Construction's claims in the amount of $250,000, in addition to attorney fees and expenses.

In response, the debtor submits that he was acting in his corporate capacity at all times,[2] that he executed all documents truthfully and to the best of his information, and that Old Republic, through its agents, knew, or should have known of the situation regarding the construction and outstanding invoices at the time of the closing.

Pursuant to 11 U.S.C. § 523(a)(2)(A), a debt is non-dischargeable if the debt is:

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

---

[2]The debtor makes the argument that he cannot be held personally liable when he was acting in his corporate capacity. However, "[i]t is commonly recognized that an agent is responsible for his own tortious acts, notwithstanding the agency relationship and regardless of whether the principal is also liable." *Brewer Machine & Conveyor Mfg. Co., Inc. v. Old Nat'l Bank*, 248 F.R.D. 478, 482 (W.D. Ky. 2008) (citing Restatement (Third) of Agency, § 7.01 (2006)). This is consistent with Tennessee law "that an agent cannot escape liability for tortious acts, including fraud or misrepresentation, against third persons simply because the agent was acting within the scope of the agency or at the direction of the employer." *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980). *See also* T.C.A. § 48-217-101(a)(3). Accordingly, the debtor may be personally liable if he is found to have acted fraudulently, regardless of whether he signed the affidavit in his corporate capacity.

A creditor must prove the following elements in order to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A):

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss.

*Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998) (citation omitted). The creditor has the burden to prove each of these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). The Court finds that Old Republic has met its burden of proof.

## A. **FIRST ELEMENT OF 11 U.S.C. § 523(a)(2)(A)**

To prevail on the first element of its claim, Old Republic must prove that the debtor obtained money, property, or services through material misrepresentations which the debtor knew were false or were made with gross recklessness. *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003). This element can be broken down into three basic requirements. First, the debtor must have obtained a benefit. However, it is not required that the debtor personally received the money. *Id.* at 760-61. Here, the debtor clearly benefitted from his materially false statement. With the debtor's signed statement, the closing on the property went through, and he was released from his $1,600,000 guaranty. Moreover, the debtor wrote two checks to himself, individually, from

the sale proceeds of $151,832.12, totaling $113,500, and he failed to adequately explain why he received these funds.

The second and third requirements of this first element necessitate a showing that (1) the debtor made material misrepresentations to Old Republic and (2) that he did so knowingly or by recklessly failing to determine their truth. *Id.* A "material misrepresentation" is defined as "substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision." *Id.* at 761 (citation omitted). The debtor's representation that all subcontractors and vendors had been paid was false, and it was clearly material – at the very least, $250,000 in invoices remained unpaid at the time the debtor signed the affidavit. Moreover, the proof showed that the debtor knew of the material misrepresentation, or at best, his signing of the affidavit was done with gross recklessness. Mr. Carpenter testified that he faxed or hand delivered all invoices to the debtor upon their receipt. He further testified that the debtor was paying these invoices in a timely manner until May 2007, the point where Green Investors had already drawn its entire line of credit ($1,600,000) from BB&T. The debtor testified at trial that he did not receive these invoices and did not know about the substantial unpaid invoices at the time he signed the affidavit. This testimony was inconsistent with the debtor's deposition testimony.

As the trier of fact,[3] the Court had the opportunity to view the witnesses on the stand and assess their demeanor. Based on the testimony and the Court's observations, it is clear that the debtor's story is not credible. It stands to reason that if the debtor had been receiving invoices from Mr. Carpenter on a regular basis and then suddenly, no more invoices were received, he would have made inquiries to ensure that everyone was being paid and to ensure that work was actually being done. Mr. Carpenter's testimony that he continued to forward the invoices to the debtor but that the debtor stopped paying them in May 2007 was more believable. Mr. Carpenter had no reason to fabricate his testimony, and he was very credible. Only the debtor had a financial reason to fabricate his version of events, and even his versions of events were inconsistent.

### B. SECOND ELEMENT OF 11 U.S.C. § 523(a)(2)(A)

To prevail on the second element of its claim, Old Republic must prove that the debtor intended to deceive through his misrepresentation. "A debtor intends to deceive a creditor 'when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor.'" ***Haney v. Copeland (In re Copeland)***, 291 B.R. at 765-66 (citation omitted). The trier of fact "must consider whether the totality of the circumstances 'presents a picture of deceptive conduct by the

---

[3]In ***Ramsey v. United Mine Workers of Am.,*** 481 F.2d 742, 747 (6th Cir. 1973), the Sixth Circuit recognized that "however we might individually view the evidence if we were the triers of fact, it is clear that we are required to give great weight to the findings of the trial court which had the opportunity to see the witnesses, to weigh their evidence as it was presented, to view the demeanor of the persons who testified in court, and to determine all issues of credibility."

debtor which indicates an intent to deceive the creditor.'" *Id.* at 766 (citation omitted). Any benefit of the doubt must be resolved in favor of the debtor. ***XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),*** 16 F.3d 1443, 1452 (6th Cir. 1994).

In this case, there is no doubt. The totality of the circumstances shows that the debtor intended to deceive. The debtor's affidavit is a sworn statement that affirmatively stated that all subcontractors or vendors had been paid at the time of closing. Moreover, the debtor's affidavit expressly provides that the purpose of the affidavit is to induce Old Republic to issue a title insurance policy without an exception for contractors' liens. There can be no question that the debtor understood the plain meaning of these words when he signed the affidavit. In addition, the debtor had reason to deceive. With interest, Green Investors owed over $1,600,000 to BB&T, it had exhausted its credit limit with BB&T, the debtor was under a $1,600,000 guaranty to BB&T, and there was no other source to pay the remaining subcontractors and vendors. The only way out was to close on the house so that Green Investors, as the borrower, could repay BB&T, and in turn, release the debtor from his guaranty.

## C. THIRD ELEMENT OF 11 U.S.C. § 523(a)(2)(A)

To prevail on the third element of its claim, Old Republic must prove that it actually relied on the debtor's representations and, based upon the facts and circumstances known to it at the time, that its reliance was justifiable. *Haney v. Copeland (In re Copeland)*, 291 B.R. at 767. *See also Field v. Mans,* 516 U.S. 59, 70-71 (1995) (adopting lower subjective standard of justifiable reliance as opposed to objective standard of reasonable reliance). A creditor will be found to have justifiably relied on a representation even where that creditor "might have ascertained the falsity of the representation had he made an investigation." *Haney v. Copeland (In re Copeland)*, 291 B.R. at 767 (citation omitted).

The testimony supports Old Republic's claim that it justifiably relied on the false representations in the debtor's affidavit. Without the debtor's statement that all subcontractors and vendors had been paid in full, Old Republic would not have removed the exception to title insurance coverage for any mechanics', contractors', or materialmen's liens and lien claims. Reliance on the owner of the Property to accurately represent that all subcontractors and lenders had been paid was justified. *See Lawyers Title Ins. Corp. v. Dallem (In re Dallem)*, 850 F.2d 446, 449 (8th Cir. 1988) (applying reasonable reliance standard, court held that title company reasonably relied on contractor's affidavit representing "(1) that all of the persons who have furnished services, labor or material used in the construction have been paid in full; (2) that there are no mechanics' or materialmen's

Case 3:09-ap-00088   Doc 78   Filed 08/06/10   Entered 08/06/10 08:50:59   Desc Main
Document      Page 11 of 13

liens against said property, and (3) that there are no claims outstanding which would entitle the holder thereof to claim a lien against the property").

### D. FOURTH ELEMENT OF 11 U.S.C. § 523(a)(2)(A)

To prevail on the fourth and final element of its claim, Old Republic must prove that its reliance on the debtor's misrepresentation was the proximate cause of their loss. This requires a "'direct link between the alleged fraud and the creation of the debt.'" *Haney v. Copeland (In re Copeland)*, 291 B.R. at 767 (citation omitted). Here, Carpenter Construction placed a mechanic's lien against the Property for work done prior to closing. Because the exception for any mechanics', contractors', or materialmen's liens and lien claims had been removed, Old Republic was responsible for defending and indemnifying the Greenbergs against Carpenter Construction's lien claims, resulting in the payment of $250,000 to Carpenter Construction on their behalf. There is no question that the debtor's misrepresentation is directly linked to Old Republic's loss.

After considering each of the elements required under 11 U.S.C. § 523(a)(2)(A), the Court finds that Old Republic's claim is non-dischargeable.

### F. WAIVER

The Court also rejects the debtor's argument that Old Republic has released any rights it had under 11 U.S.C. § 523 when it executed the settlement agreement in the state court

Case 3:09-ap-00088    Doc 78    Filed 08/06/10    Entered 08/06/10 08:50:59    Desc Main
Document      Page 12 of 13

proceedings. The Supreme Court has held that the non-dischargeability provisions "appl[y] to all debts that 'aris[e] out of' fraud." *Archer v. Warner*, 538 U.S. 314, 321 (2003) (citations omitted). "A debt embodied in the settlement of a fraud case 'arises' no less 'out of' the underlying fraud than a debt embodied in a stipulation and consent decree." *Id.* This does not mean that "a debt allegedly arising from fraudulent conduct, which is made the subject of a settlement agreement, is ipso facto non-dischargeable under § 523(a)(2)(A)." *Simmons Capital Advisors, Ltd., v. Bachinski (In re Bachinski)*, 393 B.R. 522, 542 (Bankr. S.D. Ohio 2008). Instead, the creditor has the opportunity "to demonstrate that the debt underlying a settlement arises out of fraud, false pretenses or false representation." *Id.* (citations omitted). As set forth in the Memorandum Opinion, Old Republic met this burden and demonstrated that its claim arises out of the debtor's fraudulent representation.

### III. CONCLUSION

Accordingly, the Court finds that Old Republic's claim in the amount of $250,000, plus attorneys fees of $36,940 incurred in the state court litigation, is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.